UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDY CALIBUSO,

              Plaintiff,

      vs.

BANK OF AMERICA CORPORATION, BANK
OF AMERICA CORPORATION CORPORATE
BENEFITS COMMITTEE, KENNETH D. LEWIS,
J. STEELE ALPHIN, AMY WOODS BRINKLEY,
EDWARD J. BROWN, III, CHARLES J.
COOLEY, RICHARD M. DEMARTINI,
BARBARA J. DESOER, JAMES H. HANCE,
LIAM E. MCGEE, EUGENE M. MCQUADE,
ALVARO G. DE MOLINA, MICHAEL E.
O'NEILL, OWEN G. SHELL, JR., R. EUGENE
TAYLOR, STEVEN TERRY, F. WILLIAM
VANDIVER, JR., BRADFORD H. WARNER,
WILLIAM BARNET, III, FRANK P. BRAMBLE,
VIRGIS W. COLBERT, JOHN T. COLLINS,
GARY L. COUNTRYMAN, TOMMY R.
FRANKS, CHARLES K. GIFFORD, MONICA C.
LOZANO, WALTER E. MASSEY, THOMAS J.
MAY, PATRICIA E. MITCHELL, JOSEPH W.
PRUEHER, CHARLES O. ROSSOTTI, THOMAS
M. RYAN, O. TEMPLE SLOAN, JR., MEREDITH
R. SPANGLER, ROBERT L. TILLMAN, and
JACKIE M. WARD,

              Defendants.

'09 CIV   2674

INDEX NO.

**COMPLAINT (ERISA)**

CLASS ACTION





Plaintiff Judy Calibuso, individually and on behalf of a class of similarly situated participants in the Bank of America 401(k) Plan ("the 401(k) Plan") and the Bank of America Pension Plan ("Pension Plan") (collectively "the Plans"), and on behalf of the 401(k) Plan, alleges the following for her Complaint:

806233.2

## NATURE OF THE CASE

1.      Plaintiff's claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), arise out of the defendant fiduciaries' violations of their statutory duties of prudence and loyalty.  Defendants breached these duties by (1) continuing to invest assets of Plaintiff's 401(k) Plan in stock of Bank of America Corporation ("Bank of America"), at a time when the fiduciaries knew or should have known that the stock was an imprudent investment because Bank of America had taken on massive new risks by acquiring Countrywide Financial Corporation and Merrill Lynch, Inc., two huge financial institutions each of which was on the brink of collapse; (2) continuing to permit Pension Plan participants to tie their Pension Plan benefits to the performance of Bank of America stock, at a time when the fiduciaries knew or should have known that Bank of America stock was unlikely to yield appropriate returns for a pension plan investment; (3) making misrepresentations and failing to disclose information necessary for employees to protect their retirement savings; and (4) failing to monitor the performance of other fiduciaries appointed by defendants.  As a consequence of Defendants' breaches, the 401(k) Plan, which held more than $3 billion in Bank of America stock as of December 31, 2007, has suffered significant losses, and Plaintiff and the class members have lost both retirement savings in the 401(k) Plan and pension benefits under the Pension Plan.  Plaintiff brings this action against the Plans' fiduciaries to compel them to make good to the 401(k) Plan its losses occasioned by their breaches and to recalculate the Pension Plan benefits of Plaintiffs and class members to place them in the position they would have occupied but for Defendants' breaches.

## JURISDICTION

2.      Plaintiff brings this action for declaratory, injunctive, equitable, and monetary relief pursuant to ERISA § 502, 29 U.S.C. § 1132.  This Court has subject matter jurisdiction

over Plaintiff's claims under ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

## VENUE

3.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because one or more of the Defendants resides or may be found in this District, the employee pension benefit plan that is the subject of Plaintiff's claims is administered in part in this District, and some of the breaches alleged took place in this District.

## PARTIES

### Plaintiff

4.     Plaintiff Judy Calibuso is, and at all relevant times has been, a participant in the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).  At all relevant times, a portion of Plaintiff's retirement accounts have been invested in one or more sub-funds of the 401(k) Plan that held stock of Bank of America.  Plaintiff Calibuso also is, and at all relevant times has been, a participant in the Bank of America Pension Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).  At all relevant times, Plaintiff Calibuso's benefit under the Pension Plan was tied to the performance of Bank of America stock.  As a result of the breaches of fiduciary duty alleged herein, Plaintiff Calibuso's retirement savings in the 401(k) Plan and account balance under the Pension Plan have been devastated.  Plaintiff Calibuso has been an employee of Bank of America since 1995.  Plaintiff Calibuso resides in Miami, Florida.

### Defendants

5.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant Bank of America was a Delaware corporation with its principal place of business in Charlotte, North Carolina.  Bank of America is, and at all relevant times has been, the plan sponsor of the Plans within the meaning of ERISA § 3(16), 29 U.S.C. § 1001(16).  Plaintiff

806233.2
-3-

is informed and believes, and based thereon alleges, that Bank of America is, and at all relevant times has been, a fiduciary of the Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercises discretionary authority or discretionary control respecting management of the Plans, and/or exercised authority or control respecting management or distribution of assets of the Plans, and/or had discretionary authority or discretionary responsibility in the administration of the Plans.  Plaintiff is informed and believes, and based thereon alleges, that at all relevant times, Bank of America has been empowered to appoint and remove fiduciaries of the Plans and was required to periodically review the performance of any fiduciary to whom it had delegated or allocated duties under the Plans.

6.      Plaintiff is informed and believes, and based thereon alleges, that at all relevant times Defendant Bank of America Corporation Corporate Benefit Committee ("Plan Committee") was the Plan Administrator and named fiduciary of the Plans within the meaning of ERISA § 3(16), 29 U.S.C. § 1002(16) and ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).  In addition, Plaintiff is informed and believes, and based thereon alleges, that the Plan Committee and its members had discretionary control and authority to select the investment options offered to participants under the 401(k) Plan and had discretionary control and authority to select the investment choices offered to participants under the Pension Plan.  Plaintiff is informed and believes, and based thereon alleges, that the Plan Committee and its members were at some or all relevant times fiduciaries of the Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or discretionary control respecting management of the Plans, and/or exercised authority or control respecting management or distribution of the assets of the Plan, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

806233.2

7.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Kenneth D. Lewis was the Chief Executive Officer of Defendant Bank of America Corporation and was a member of the Plan Committee.  On information and belief, Mr. Lewis was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plan, as set forth in paragraph 6 above.  On information and belief, Mr. Lewis was a fiduciary of the Plans by virtue of serving on Defendant Bank of America's Board of Directors ("the Board").  On information and belief, the Board had the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

8.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant J. Steele Alphin was the Chief Administrative Officer of Defendant Bank of America Corporation, was responsible among other things for the company's Global Human Resources, and was a member of the Plan Committee.  On information and belief, Mr. Alphin was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

9.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Amy Woods Brinkley was the Chief Risk Officer of Defendant Bank of America Corporation, and was a member of the Plan Committee.  On information and belief, Ms. Brinkley was a fiduciary of the Plans during all times that she served on the Plan

Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

10.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Edward J. Brown, III, was a member of the Plan Committee. On information and belief, Mr. Brown was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

11.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Charles J. Cooley was a member of the Plan Committee. On information and belief, Mr. Cooley was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

12.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Richard M. DeMartini was a member of the Plan Committee. On information and belief, Mr. DeMartini was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

13.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Barbara J. Desoer was the president of Bank of America Mortgage, Home Equity & Insurance Services, and was a member of the Plan Committee. On information and belief, Ms. Desoer was a fiduciary of the Plans during all times that she served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

806233.2                                    -6-

14.    Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant James H. Hance was a member of the Plan Committee. On information and belief, Mr. Hance was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

15.    Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Liam E. McGee was president of the Consumer & Small Business Bank for Bank of America, and was a member of the Plan Committee. On information and belief, Mr. McGee was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

16.    Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Eugene M. McQuade was a member of the Plan Committee. On information and belief, Mr. McQuade was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

17.    Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Alvaro G. de Molina was a member of the Plan Committee. On information and belief, Mr. de Molina was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

18.    Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Michael E. O'Neill was a member of the Plan Committee. On

information and belief, Mr. O'Neill was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

19.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Owen G. Shell, Jr. was a member of the Plan Committee. On information and belief, Mr. Shell was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

20.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant R. Eugene Taylor was a member of the Plan Committee. On information and belief, Mr. Taylor was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

21.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Steven Terry acted as the Plan Administrator for the Plans and/or was a member of the Plan Committee. On information and belief, Mr. Terry was a fiduciary of the Plans during all times that he acted as Plan Administrator or served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above, and because the Plan Administrator is a fiduciary as defined in ERISA § 3(16), 29 U.S.C. § 1002(16). Mr. Terry signed the plans' IRS Forms 5500 filed in 2007 as the plan administrator.

22.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant F. William Vandiver, Jr. was a member of the Plan Committee. On

information and belief, Mr. Vandiver was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

23.     Plaintiff is informed and believes, and based thereon alleges, that at some or all relevant times Defendant Bradford H. Warner was a member of the Plan Committee.  On information and belief, Mr. Warner was a fiduciary of the Plans during all times that he served on the Plan Committee, to the same extent and for the same reasons that the Plan Committee was a fiduciary of the Plans, as set forth in paragraph 6 above.

24.     Defendants Lewis, Alphin, Brinkley, Brown, Cooley, DeMartini, Desoer, Hance, McGee, McQuade, de Molina, O'Neill, Shell, Taylor, Terry, Vandiver, and Warner are sometimes referred to herein as the "Committee Defendants."

25.     On information and belief, William Barnet, III, was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

26.     On information and belief, Frank P. Bramble was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

27.     On information and belief, Virgis W. Colbert was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

28.     On information and belief, John T. Collins was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

29.     On information and belief, Gary L. Countryman was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

30.     On information and belief, Tommy R. Franks was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty

806233.2

to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

31.     On information and belief, Charles K. Gifford was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

32.     On information and belief, Monica C. Lozano was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

33.     On information and belief, Walter E. Massey was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

34.     On information and belief, Thomas J. May was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to

appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

35.    On information and belief, Patricia E. Mitchell was a fiduciary of the Plans by virtue of serving on the Board. On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee. As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

36.    On information and belief, Joseph W. Prueher was a fiduciary of the Plans by virtue of serving on the Board. On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee. As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

37.    On information and belief, Charles O. Rossotti was a fiduciary of the Plans by virtue of serving on the Board. On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee. As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

38.    On information and belief, Thomas M. Ryan was a fiduciary of the Plans by virtue of serving on the Board. On information and belief, the Board had or exercised the

806233.2

authority to appoint and remove members of the Plan Committee. As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

39.     On information and belief, O. Temple Sloan, Jr., was a fiduciary of the Plans by virtue of serving as Lead Director on the Board. On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee. As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

40.     On information and belief, Meredith R. Spangler was a fiduciary of the Plans by virtue of serving on the Board. On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee. As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

41.     On information and belief, Robert L. Tillman was a fiduciary of the Plans by virtue of serving on the Board. On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee. As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

806233.2                                    -13-

42.    On information and belief, Jackie M. Ward was a fiduciary of the Plans by virtue of serving on the Board.  On information and belief, the Board had or exercised the authority to appoint and remove members of the Plan Committee.  As the fiduciaries with the authority to appoint and remove members of the Plan Committee, the Board had a fiduciary duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

43.    Defendants Barnet, Bramble, Colbert, Collins, Countryman, Franks, Gifford, Lewis, Lozano, Massey, May, Mitchell, Prueher, Rossotti, Ryan, Sloan, Spangler, Tillman, and Ward are sometimes referred to herein as the "Director Defendants."

## FACTS

## The 401(k) Plan

44.    The 401(k) Plan is an employee pension benefit plan and an employee benefit plan within the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

45.    At all relevant times, the 401(k) Plan has been a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the 401(k) Plan has provided for individual accounts for each participant and for benefits based solely upon the amounts contributed to the participant's account and any plan income, expenses, gains, losses, and forfeitures from other accounts which may be allocated to such participants' accounts.  Thus, participants bear the risk of poor performance by the Plan's investments.

46.    At all relevant times, the 401(k) Plan has been funded by employer and employee contributions.

47.    At all relevant times, the 401(k) Plan included Bank of America stock as an investment option for participants' retirement savings.

806233 2

48.     The summary plan description for the 401(k) Plan stated that Bank of America stock was "inherently the most risky of the funds because it is invested in the common stock of a single company and any single stock can be more volatile than the market as a whole."

49.     According to the 401(k) Plan's 2007 Annual Report (IRS Form 5500), as of December 31, 2007, the 401(k) Plan had $3,002,390,722 invested in Bank of America stock, out of total assets of $9,542,000,933. Thus, Bank of America stock represented 31.5% of the 401(k) Plan's assets. Plaintiff is informed and believes, and based thereon alleges, that Bank of America stock constituted the 401(k) Plan's largest single investment.

### The Pension Plan

50.     At all relevant times, the Pension Plan has been a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1001(35).

51.     At some or all relevant times, the Pension Plan has defined the benefit payable at retirement using a cash balance benefit formula, in which a participant's benefit at retirement is based on a hypothetical account balance.

52.     Under the Pension Plan's formula, a participant's hypothetical account balance is based on compensation credits and investment credits.

53.     Compensation credits are a percentage of the participant's compensation, with the applicable percentage determined based on age, years of service, and the date on which the participant first became a participant in the Pension Plan.

54.     Investment credits are based on the performance of investment measures to which a participant elects to tie his or her cash balance benefit, although Pension Plan assets are not actually invested according to participant investment elections. Investment credits under the Pension Plan are the hypothetical investment return that would be realized if the participant's

compensation credits were invested in the investment measures.  Thus, if the investment measure to which a participant elects to tie his or her cash balance benefit performs well, that participant's benefit under the Pension Plan is higher than if the investment measure to which he or she ties her cash balance benefit performs poorly.

55.    As the summary plan description for the Pension Plan explains, "[t]he Bank of America Pension Plan differs from typical pension plans, which do not give choices that affect how your benefit will grow.  The Bank of America Pension Plan gives you the opportunity to 'invest' the funds in your account.  You can select the investment choices to which your account is tied.  You can select from the same investment choices as you do in the 401(k) Plan.  Your Pension Plan account is not actually invested in those investment choices, but the amount you direct to each investment choice is credited with the same return that would be received if your account were actually invested in that investment choice in the 401(k) Plan."

56.    At all relevant times, the Pension Plan required that participants make a hypothetical investment election for their compensation credits.  Compensation credits for which a participant failed to choose a hypothetical investment were tied to a stable capital fund.

57.    At all relevant times, Bank of America stock was one of the investment choices to which participants could tie their benefits under the Pension Plan.

58.    The Pension Plan is funded by employer contributions and the employer bears the risk of poor performance by the Pension Plan's actual investments.  Thus, the employer's funding obligation increases as participants' benefits increase.  As a result, Bank of America has a conflict of interest with respect to the selection of the hypothetical investment options for the Pension Plan, because Bank of America's funding obligation increases if participants select well-performing hypothetical investments, and declines if participants select poorly performing

806233.2

-16-

hypothetical investments. While the participant-directed investments are hypothetical, their impact on both funding and benefits under the Pension Plan is real.

59.    The conflict of interest inherent in the Pension Plan's benefit structure imposed on Defendants, the Pension Plan's fiduciaries a heightened duty to ensure that the Pension Plan offered prudent hypothetical investment options and that Pension Plan participants were fully informed regarding the hypothetical investment options.

60.    The summary plan description for both Plans incorporated by reference certain information filed with the Securities Exchange Commission ("SEC"), including Forms 10-K, 11-K, 10-Q, and 8-K.

## Bank of America's Acquisition of Countrywide Financial Corporation

61.    On December 19, 2007, the Wall Street Journal reported that Bank of America had the highest net income of any U.S. commercial bank in 2007 and called Bank of America a "stalwart" among financial institutions. The Journal credited this success to a decision by Chief Executive Officer Kenneth D. Lewis in 2001 to get Bank of America out of the business of issuing subprime mortgages. As a result, the Journal wrote, Bank of America was a "healthy bank" with "plenty of time to absorb" new lessons regarding lending standards.

62.    At that time, Bank of America's stock price was approximately $41 per share.

63.    On January 11, 2008, Bank of America announced that it would purchase mortgage lender Countrywide Financial Corporation ("Countrywide"), which was reported to be facing bankruptcy, for $4 billion. Countrywide had a history of risky lending practices, including lending to borrowers with low credit scores, approving loans on the basis of minimal documentation, and allowing borrowers to pay less than the minimum monthly interest due on their loans while adding the unpaid interest to the principal of their loans (pay-option ARMS).

64.     In October 2008, Countrywide entered into an agreement with eleven state attorneys general to settle charges of predatory lending.

65.     As a result of Bank of America's decision to acquire Countrywide, Bank of America stock became an imprudent investment for the Plan.

66.     Defendants, who were fiduciaries of the Plan, knew or should have known that as of January 11, 2008, Bank of America stock was an imprudent investment for the 401(k) Plan and an imprudent hypothetical investment for purposes of participants' accrual of benefits under the Pension Plan.

67.     Despite the increased riskiness of Bank of America stock due to the acquisition of Countrywide, Defendants did not divest the 401(k) Plan of its Bank of America stock holdings, continued to permit investment of 401(k) Plan assets in Bank of America stock and continued to permit Pension Plan participants to tie their pension benefits to the performance of Bank of America stock.

68.     Defendants did not correct the advice in the 401(k) Plan's summary plan description that Bank of America stock was a more risky investment merely because it was a single stock.

69.     Instead, Bank of America touted the Countrywide acquisition in a press release incorporated by reference into the Plans' summary plan description as an exhibit to Bank of America's July 1, 2008 8-K, stating that due to the Countrywide purchase "Bank of America will benefit from excellent systems and a broad distribution network that will offer more ways to meet our customers' credit needs."

806233.2

## Bank of America's Acquisition of Merrill Lynch & Co., Inc.

70.     On September 13, 2008, then-Chairman and CEO of Merrill Lynch & Co., Inc. ("Merrill Lynch") John Thain contacted Defendant Lewis in connection with Defendant Bank of America's possible acquisition of Merrill Lynch.

71.     Two days later, on September 15, 2008, Bank of America announced that it had agreed to acquire Merrill Lynch in an all stock deal valued at $50 billion at the time. The agreement had a "material adverse change" clause that would have permitted Bank of America to cancel the deal. Further, according to the proxy statement Bank of America later filed in connection with the acquisition, the agreement contained covenants that provided for "access to information of the other company," thus ensuring that Bank of America had open access to Merrill Lynch's books.

72.     Merrill Lynch had been one of the largest issuers of "toxic" securities, including collateralized debt obligations.

73.     In a press release incorporated by reference into the summary plan description for the Plans as an exhibit to Bank of America's September 15, 2008 8-K, Defendant Lewis was quoted as stating that the acquisition was a "great opportunity for our shareholders" and that together, Bank of America and Merrill Lynch were "more valuable because of the synergies in our businesses."

74.     On October 16, 2008, Merrill Lynch reported a net loss of $5.2 billion for the third quarter of 2008.

75.     Also in October 2008, Bank of America accepted $25 billion in government bailout money.

76.    On December 5, 2008, Bank of America and Merrill Lynch shareholders voted to approve the merger.

77.    On January 16, 2009, Bank of America announced that Merrill Lynch had a net loss of $15.31 billion in the fourth quarter of 2008.  Upon information and belief, the bulk of these losses likely occurred in October and November 2008 – and these losses were incurred on portfolio assets that belonged to investment categories where close monitoring and valuation was possible, either through real time price quotations available from exchange traded currency, financial, equity, commodity, and derivatives markets, or through a variety of indices where Bank of America (and Merrill Lynch) participated as data providers and market makers.  To the extent some assets in Merrill Lynch's portfolios belonged to a category where valuations are done on a mark-to-mathematical-model basis, conditions in the markets in October and November 2008 had deteriorated so significantly that corrections to those models were warranted.  Indeed, *The Wall Street Journal* later confirmed in a January 27, 2009 article that "[d]oubts [about the deal] began to creep in shortly before Thanksgiving" at which time "pretax quarterly losses at Merrill were approaching $9 billion."

78.    Also on January 16, 2009, Bank of America announced that it would be receiving an additional $20 billion in government bailout money.

79.    On the same day as the disclosure of Merrill Lynch's massive fourth quarter losses, during an earnings conference call with analysts and investors, Defendant Lewis revealed that Defendant Bank of America had contemplated terminating the merger with Merrill Lynch, but decided to proceed with the deal because the U.S. Treasury and Federal Reserve were "firmly of the view that terminating or delaying the closing of the transaction could lead to

significant concerns and could result in serious systemic harm" and assured that they would provide assistance to close the deal.

80.     On February 5, 2009, *The Wall Street Journal* reported that in December 2008, Bank of America had considered abandoning its acquisition of Merrill Lynch in view of Merrill Lynch's escalating losses, but had decided to go through with the purchase under pressure from the government.  Defendant Lewis was quoted as saying that by going through with the deal, "We did think we were doing the right thing for the country."

81.     As a result of the decisions to acquire Merrill Lynch and to go through with the acquisition, Bank of America stock was an imprudent investment for the 401(k) Plan and an imprudent hypothetical investment for purposes of participants' accrual of benefits under the Pension Plan.

82.     Despite the increased riskiness of Bank of America stock due to the Merrill Lynch acquisition, Defendants still did not divest the 401(k) Plan of its Bank of America stock holdings, still continued to permit investment of 401(k) Plan assets in Bank of America stock, and still continued to permit Pension Plan participants to tie their pension benefits to the performance of Bank of America stock.

83.     Defendants did not correct the advice in the 401(k) Plan's summary plan description that Bank of America stock was a more risky investment merely because it was a single stock.

84.     Plaintiff is informed and believes, and based thereon alleges, that as a consequence of its continued investment in Bank of America stock when Defendants, the 401(k) Plan's fiduciaries, knew or should have known that the stock was an imprudent investment for a

retirement plan and when 401(k) Plan participants were not adequately informed of the increased risk associated with the stock, the 401(k) Plan has suffered massive losses.

85.     The Director Defendants and Bank of America failed to monitor the performance of the Plans' fiduciaries with respect to the 401(k) Plan's investment in Bank of America stock, the calculation of participants' Pension Plan investment credits measured by the performance of Bank of America stock, and with respect to the fiduciaries' failures to ensure that the Plans' participants were fully informed regarding Bank of America stock as an investment and hypothetical investment.

86.     The 401(k) Plan has suffered losses as a consequence of the foregoing breaches and related acts and omissions by Defendants.

87.     Pension Plan participants have suffered reductions in their investment credits under the Pension Plan's benefit formula, resulting in lower Pension Plan benefits, as a consequence of the foregoing breaches and related acts and omissions by Defendants.

## CLASS ACTION ALLEGATIONS

88.     Plaintiff brings the First through Third Claims for Relief contained herein on behalf of herself and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of a Class, defined as follows:

> All Participants in the Bank of America 401(k) Plan for whose individual accounts the 401(k) Plan held shares of Bank of America stock at any time from January 11, 2008, through the present. Excluded from the Class are the individual defendants, officers and directors of the corporate defendants, members of their immediate families, and the beneficiaries, heirs, successors, or assigns of any of the foregoing.

89.     The requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(a), (b)(1), and (b)(2) are satisfied in that:

a.   The members of the Class are so numerous that joinder of all members is impracticable. Although the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes that there were, during the relevant time period, more than 200,000 participants in the 401(k) Plan, a substantial number of whom had some or all of the 401(k) Plan assets allocated to their accounts in the 401(k) Plan invested in Bank of America stock.

b.   There are questions of law and fact common to the Class, including the following: whether Defendants were fiduciaries of the 401(k) Plan during the relevant time period; whether the Plan Committee and Bank of America breached the fiduciary duties they owed to members of the Class by imprudently maintaining Bank of America stock as a 401(k) Plan investment; whether the Plan Committee and Bank of America breached the fiduciary duties they owed to members of the Class by, inter alia, imprudently allowing and/or directing the 401(k) Plan to purchase and hold Bank of America stock; whether the Plan Committee and Bank of America breached the fiduciary duties they owed to members of the class by failing to ensure that 401(k) Plan participants were fully informed of the increasing risk associated with Bank of America stock; whether the Director Defendants and Bank of America breached the fiduciary duties they owed to members of the Class by failing to monitor the performance of the 401(k) Plan's fiduciaries; whether the 401(k) Plan and the Class members were injured by such breaches; and whether Defendants must make the 401(k) Plan whole for its losses pursuant to ERISA § 409, 29 U.S.C. § 1109.

c.   Plaintiff is a member of the Class and her claims are typical of the claims of the members of the Class, as Plaintiff and all members of the Class sustained injury arising out of Defendants' wrongful conduct in breaching their fiduciary duties and violating ERISA as complained of herein.

d.   Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests antagonistic to or in conflict with those of the other Class members. Plaintiff is represented by attorneys who specialize in ERISA and class action litigation.

e.   Prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants. Alternatively, adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests, particularly in light of the fact that Plaintiff seeks to obtain relief on behalf of the 401(k) Plan as a whole.

f.   Defendants have acted and/or failed to act on grounds generally applicable to the Class, thereby making appropriate monetary relief, final injunctive and other equitable relief with respect to the Class as a whole.

90.    Plaintiff brings the Fourth through Sixth Claims for Relief contained herein on behalf of herself and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of a Class, defined as follows:

> All Participants in the Pension Plan some or all of whose investment credits used Bank of America stock as an investment measure at any time from January 11, 2008, through the present. Excluded from the Class are the individual defendants, officers and directors of the corporate defendants, members of their immediate families, and the beneficiaries, heirs, successors, or assigns of any of the foregoing.

91.    The requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(a), (b)(1), and (b)(2) are satisfied in that:

a.    The members of the Class are so numerous that joinder of all members is impracticable. Although the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believe that there were, during the relevant time period, more than 200,000 participants in the Pension Plan, a substantial number of whom had tied their benefits under the Pension Plan to the performance of Bank of America stock.

b.    There are questions of law and fact common to the Class, including the following: whether Defendants were fiduciaries of the Pension Plan during the relevant time period; whether the Plan Committee and Bank of America breached the fiduciary duties they owed to members of the Class by imprudently maintaining Bank of America stock as an investment measure under the Pension Plan; whether the Plan Committee and Bank of America breached the fiduciary duties they owed to members of the Class by failing to ensure that Pension Plan participants were fully informed of the increasing risk associated with Bank of America stock; whether the Director Defendants and Bank of America breached the fiduciary duties they owed to members of the Class by failing to monitor the performance of the Pension Plan's fiduciaries; whether the Class members were injured by such breaches; and whether recalculation of Class members' hypothetical account balances under the Pension Plan is appropriate equitable relief from Defendants' breaches.

c.    Plaintiffs are members of the Class and their claims are typical of the claims of the members of the Class, as Plaintiffs and all members of the Class sustained injury arising out of Defendants' wrongful conduct in breaching their fiduciary duties and violating ERISA as complained of herein.

d.    Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have no interests antagonistic to or in conflict with those of the other Class members. Plaintiffs are represented by attorneys who specialize in ERISA and class action litigation.

e.    Prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants. Alternatively, adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

f.    Defendants have acted and/or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and other equitable relief with respect to the Class as a whole.

## FIRST CLAIM FOR RELIEF
### Claim for Breach of Fiduciary Duty Against Plan Committee, Committee Defendants, and Bank of America – Imprudent Investment of 401(k) Plan Assets
[ERISA §§ 404(a)(1), 409, 502(a)(2), 29 U.S.C. §§ 1104(a)(1), 1109, 1132(a)(2)]

92.    Plaintiff incorporates Paragraphs 1 through 91, above, as though fully set forth herein.

93.    ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), requires, inter alia, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and to diversify the plan's investments so as to minimize the possibility of large losses.

94.    Defendants' selection, monitoring, and continuation of the 401(k) Plan's investment in Bank of America stock were subject to the above-described fiduciary duties. By their acts and omissions in continuing 401(k) Plan investment in Bank of America stock and/or

in continuing Bank of America stock funds as investment alternatives under the 401(k) Plan, Defendants, and each of them, breached each of these fiduciary duties.

95.    Each of the Defendants was also a co-fiduciary liable for the breaches committed by each other fiduciary under ERISA § 405, 29 U.S.C. § 1105, because each (a) knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing such act or omission was a breach; (b) enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his, her, or its own fiduciary duties in the administration of the specific responsibilities giving rise to status as a fiduciary; and/or (c) knew of a breach by one or more other fiduciaries but failed to make reasonable efforts under the circumstances to remedy the breach.

96.    ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate, including removal of the fiduciary.

97.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

98.    As a consequence of Defendants' breaches of fiduciary duty, the 401(k) Plan suffered losses.

## SECOND CLAIM FOR RELIEF
### Claim for Breach of Fiduciary Duty Against Plan Committee, Committee Defendants, and Bank of America – Fiduciary Misrepresentations and Nondisclosures
[ERISA §§ 404(a)(1), 409, and 502(a)(2), 29 U.S.C. §§ 1104(a)(1), 1109, and 1132(a)(2)]

99.    Plaintiff incorporate Paragraphs 1 through 98, above, as though fully set forth herein.

100.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, inter alia, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and to diversify the plan's investments so as to minimize the possibility of large losses.

101.    Each of the Defendants was also a co-fiduciary liable for the breaches committed by each other fiduciary under ERISA § 405, 29 U.S.C. § 1105, because each (a) knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing such act or omission was a breach; (b) enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his, her, or its own fiduciary duties in the administration of the specific responsibilities giving rise to status as a fiduciary; and/or (c) knew of a breach by one or more other fiduciaries but failed to make reasonable efforts under the circumstances to remedy the breach.

102.    ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any

806233.2                    -27-

losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate, including removal of the fiduciary.

103.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

104.    By making misleading, incomplete, and inaccurate disclosures and representations to the 401(k) Plan's participants and failing to ensure that the 401(k) Plan's participants were fully informed of the increasing risk associated with Bank of America stock, Defendants, and each of them, breached their fiduciary duties to act solely in the interests of the participants and to act prudently.

105.    Plaintiff and the Class members relied upon and/or and are presumed to have relied upon Defendants' representations by directing that the 401(k) Plan purchase Bank of America stock and/or by not directing that the 401(k) Plan sell Bank of America stock, which reliance was to the detriment of Plaintiff, the Class members, and the 401(k) Plan because the 401(k) Plan purchased and/or held Bank of America stock and incurred losses on those investments, which losses resulted in reductions in the value of the 401(k) Plan accounts of Plaintiff and the Class members.

### THIRD CLAIM FOR RELIEF
#### Claim for Breach of Fiduciary Duty Against Director Defendants and Bank of America – Failure to Monitor Fiduciary Performance
#### [ERISA §§ 404(a)(1), 409, and 502(a)(2), 29 U.S.C. §§ 1104(a)(1), 1109, and 1132(a)(2)]

106.    Plaintiff incorporates paragraphs 1 through 105, above, as though fully set forth herein.

107.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, inter alia, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and to diversify the plan's investments so as to minimize the possibility of large losses.

108.    Each of the Defendants was also a co-fiduciary liable for the breaches committed by each other fiduciary under ERISA § 405, 29 U.S.C. § 1105, because each (a) knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing such act or omission was a breach; (b) enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his, her, or its own fiduciary duties in the administration of the specific responsibilities giving rise to status as a fiduciary; and/or (c) knew of a breach by one or more other fiduciaries but failed to make reasonable efforts under the circumstances to remedy the breach.

109.    ERISA § 409, 29 U.S.C. § 1109, provides, inter alia, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets.  ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate, including removal of the fiduciary.

110.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

111.    As the fiduciaries with the authority to appoint and remove members of the Plan Committee, Defendant Bank of America, acting through the Director Defendants, and the Director Defendants, who had or exercised that authority, had a duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

112.    Because these Defendants knew or should have known of the failures of the Plan Committee to fulfill its fiduciary responsibility, these Defendants breached their fiduciary responsibility by failing to replace the members of the Plan Committee with persons who would act to protect the 401(k) Plan and its participants from imprudent investments in Bank of America stock.  As a consequence of these failures the 401(k) Plan suffered losses.

## FOURTH CLAIM FOR RELIEF
### Claim for Breach of Fiduciary Duty Against Plan Committee, Committee Defendants, and Bank of America
### – Imprudent Investment Measure Under Pension Plan
### [ERISA §§ 404(a)(1) and 502(a)(3), 29 U.S.C. §§ 1104(a)(1) and 1132(a)(3)]

113.    Plaintiff incorporates paragraphs 1 through 112, above, as though fully set forth herein.

114.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, inter alia, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would

use in the conduct of an enterprise of a like character and with like aims, and to diversify the plan's investments so as to minimize the possibility of large losses.

115.   Defendants' selection, monitoring, and/or continuation of the Pension Plan's investment measures were subject to the above-described fiduciary duties.  By their acts and omissions in continuing to offer Bank of America stock as an investment measure under the Pension Plan, Defendants, and each of them, breached each of these fiduciary duties.

116.   Each of the Defendants was also a co-fiduciary liable for the breaches committed by each other fiduciary under ERISA § 405, 29 U.S.C. § 1105, because each (a) knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing such act or omission was a breach; (b) enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his, her, or its own fiduciary duties in the administration of the specific responsibilities giving rise to status as a fiduciary; and/or (c) knew of a breach by one or more other fiduciaries but failed to make reasonable efforts under the circumstances to remedy the breach.

117.   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to enjoin any act or practice which violates any portion of ERISA Title I or to obtain other appropriate equitable relief to redress such violation or to enforce any provision of ERISA Title I.

118.   As a consequence of Defendants' breaches of fiduciary duty, Plaintiffs and Class members have been harmed in that their Pension Plan benefits will be lower as a result of being tied to the declining value of Bank of America stock rather than to a prudent investment measure.

806233.2

### FIFTH CLAIM FOR RELIEF
#### Claim for Breach of Fiduciary Duty Against Plan Committee,
#### Committee Defendants, and Bank of America
#### – Fiduciary Misrepresentations and Nondisclosures
#### [ERISA §§ 404(a)(1) and 502(a)(3), 29 U.S.C. §§ 1104(a)(1), 1132(a)(3)]

119.    Plaintiff incorporates paragraphs 1 through 118, above, as though fully set forth herein.

120.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, inter alia, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and to diversify the plan's investments so as to minimize the possibility of large losses.

121.    Each of the Defendants was also a co-fiduciary liable for the breaches committed by each other fiduciary under ERISA § 405, 29 U.S.C. § 1105, because each (a) knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing such act or omission was a breach; (b) enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his, her, or its own fiduciary duties in the administration of the specific responsibilities giving rise to status as a fiduciary; and/or (c) knew of a breach by one or more other fiduciaries but failed to make reasonable efforts under the circumstances to remedy the breach.

122.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to enjoin any act or practice which violates any portion of ERISA Title I or to obtain other

806233.2

appropriate equitable relief to redress such violation or to enforce any provision of ERISA Title I.

123.    By making misleading, incomplete, and inaccurate disclosures and representations to the Pension Plan's participants and failing to ensure that the Pension Plan's participants were fully informed of the increasing risk associated with Bank of America stock, Defendants, and each of them, breached their fiduciary duties to act solely in the interests of the participants and to act prudently.

124.    Plaintiffs and the Class members relied upon and/or are presumed to have relied upon Defendants' representations by directing that their Pension Plan benefits be tied to the performance of Bank of America stock, which reliance was to the detriment of Plaintiffs and the Class members because their Pension Plan benefits will be lower as a result of being tied to the declining value of Bank of America stock rather than to a prudent investment measure.

**SIXTH CLAIM FOR RELIEF**
**Claim for Breach of Fiduciary Duty Against Director Defendants and Bank of America
– Failure to Monitor Fiduciary Performance
[ERISA §§ 404(a)(1) and 502(a)(3), 29 U.S.C. §§ 1104(a)(1) and 1132(a)(3)]**

125.    Plaintiff incorporates paragraphs 1 through 124, above, as though fully set forth herein.

126.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, inter alia, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would

806233 2

use in the conduct of an enterprise of a like character and with like aims, and to diversify the plan's investments so as to minimize the possibility of large losses.

127. Each of the Defendants was also a co-fiduciary liable for the breaches committed by each other fiduciary under ERISA § 405, 29 U.S.C. § 1105, because each (a) knowingly participated in, or knowingly undertook to conceal, an act or omission of one or more other fiduciaries, knowing such act or omission was a breach; (b) enabled one or more other fiduciaries to commit a fiduciary breach by failing to comply with his, her, or its own fiduciary duties in the administration of the specific responsibilities giving rise to status as a fiduciary; and/or (c) knew of a breach by one or more other fiduciaries but failed to make reasonable efforts under the circumstances to remedy the breach.

128. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to enjoin any act or practice which violates any portion of ERISA Title I or to obtain other appropriate equitable relief to redress such violation or to enforce any provision of ERISA Title I.

129. As the fiduciaries with the authority to appoint and remove members of the Plan Committee, Defendant Bank of America, acting through the Director Defendants, and the Director Defendants, who had or exercised that authority, had a duty to monitor the conduct of the Plan Committee to ensure that they were performing their duties consistently with the requirements of ERISA.

130. Because these Defendants knew or should have known of the failures of the Plan Committee to fulfill its fiduciary responsibility, these Defendants breached their fiduciary responsibility by failing to replace the members of the Plan Committee with persons who would act to protect the Pension Plan's participants from imprudent hypothetical investments in Bank

806233.2

of America stock. As a consequence of these failures, Plaintiffs and Class members have been injured in that their Pension Plan benefits will be lower as a result of being tied to the declining value of Bank of America stock rather than to a prudent investment measure.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court:

A.      Certify this action as a class action pursuant to Fed. R. Civ. P.23, designate Plaintiff Calibuso as Lead Plaintiff for the ERISA Class, and designate the undersigned attorneys as Class Counsel;

B.      Declare that the Defendants, and each of them, have breached their ERISA fiduciary duties to the Plans' participants and beneficiaries;

C.      Issue an order compelling the Defendants, and each of them, to make good to the 401(k) Plan or to a successor trust all losses to the 401(k) Plan resulting from these breaches, including, but not limited to, lost principal and lost return on investments that would have resulted from prudent and diversified investment of the 401(k) Plan's assets;

D.      Issue an order compelling the Defendants, and each of them, to recalculate the Pension Plan benefits of Plaintiffs and Class members whose Pension Plan benefits were tied to the performance of Bank of America stock, as though those benefits had been tied to the performance of a prudent investment measure;

E.      Award such other equitable or remedial relief as may be appropriate, including the permanent removal of the Defendants from any positions of trust with respect to the Plans and the appointment of independent fiduciaries to administer the Plans;

F.      Enjoin Defendants, and each of them, from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

G.     Order Defendants or their successor fiduciaries to allocate the 401(k) Plan's recoveries to the accounts of all 401(k) Plan participants who had any portion of their account balances invested in stock of Bank of America, in proportion to the accounts' losses attributable to the investment in stock of Bank of America;

H.     Award Plaintiff her attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

I.     Award such other and further relief as the Court deems equitable and just.

Dated: March 23, 2009

Steven E. Fineman

LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
Steven E. Fineman  (SF 8481)
Rachel Geman  (RG 0998)
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LEWIS, FEINBERG, LEE, RENAKER &
  JACKSON, P.C.
Jeffrey G. Lewis
Teresa S. Renaker
Margaret E. Hasselman
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone:  (510) 839-6824
Facsimile:  (510) 839-7839

FERGUSON, STEIN, CHAMBERS
  GRESHAM & SUMTER, P.A.
Geraldine Sumter
C. Margaret Errington
741 Kenilworth Avenue, Suite 300
Charlotte NC  28204
Telephone:  (704) 375-8461
Facsimile:  (704) 334-5654

*Attorneys for Plaintiff and the Proposed Class*

806233.2                                        -36-